UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:20-CV-00024-JHM

PINKERTON TOBACCO CO., LP
SWEDISH MATCH NORTH AMERICA, LLC,
AND NYZ AB                                                                                          PLAINTIFFS

V.

KRETEK INTERNATIONAL, INC. AND
DRYFT SCIENCES, LLC                                                                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, to Transfer. [DN 13]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendants' Alternative Motion is **GRANTED**.

### I.   BACKGROUND

Pinkerton Tobacco Co., LP, Swedish Match North America, LLC, and NYZ AB (collectively "Plaintiffs") filed a complaint against Kretek International, Inc. and DRYFT Sciences, LLC (collectively "Defendants") alleging violations of the Defend Trade Secrets Act and Kentucky Trade Secrets Act. [DN 1].

According to the Complaint, Plaintiffs' parent company Swedish Match North Europe purchased numerous trade secrets between 2013 and 2016 from nonparty TillCe AB. [DN 1 ¶¶ 21–25]. The trade secrets relate to "the composition and method of manufacturing nicotine pouch products," and Swedish Match North Europe used the trade secrets to develop a smokeless tobacco product called "ZYN." [*Id.* at ¶¶ 7, 17]. Plaintiffs are licensed to use the trade secrets for ZYN production in North America. [*See id.* at ¶¶ 18, 21].

Defendant Kretek distributes DRYFT, a competing smokeless tobacco product produced by TillCe AB. [*Id.* at ¶¶ 7–8, 30]. Before 2019, DRYFT was produced in Sweden. [*Id.* at ¶ 30]. But in September 2019, Kretek announced it would begin manufacturing DRYFT in the United States through a newly formed subsidiary, DRYFT Sciences. [*Id.* at ¶ 31]. Kretek's transition from distributor to manufacturer of DRYFT in the United States gives rise to this litigation.

Plaintiffs sued in February 2020, alleging that Kretek and DRYFT Sciences "misappropriated [Plaintiffs'] trade secrets in establishing their U.S.-based manufacturing facility." [DN 25 at 4; *see* DN 1 ¶¶ 29–38]. Substantively, Plaintiffs allege that TillCe AB gave Defendants the trade secrets and the Defendants used the trade secrets to begin U.S. DRYFT production in 2019. [DN 1 ¶¶ 29–38]. Plaintiffs bring two causes of action: (1) a violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836–1839, and (2) a violation of the Kentucky Trade Secrets Act, KRS § 365.880. [DN 1 ¶¶ 41–51]. In response, Defendants moved to dismiss the case for lack of personal jurisdiction, failure to state a claim, and improper venue. [DN 13].

## II. DISCUSSION

Defendants move to dismiss the instant case for lack of personal jurisdiction or, in the alternative, to transfer venue. Defendants also argue the Complaint may be dismissed for failure to state a claim. The Court must first decide whether personal jurisdiction exists, before proceeding to consider the venue issue. *See Antony v. Disney Enters., Inc.*, No. 18-205, 2019 WL 5866586, at *2 n.2 (E.D. Ky. Aug. 20, 2019) (noting that "28 U.S.C. § 1404(a) cannot be used to transfer a case to another district unless the original district has personal jurisdiction over the defendant; if no personal jurisdiction is found, transfer may occur under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631"). As such, the Court considers first the issue of personal jurisdiction and then proceeds to address Defendants' other arguments.

### A. Personal Jurisdiction

In its Motion to Dismiss, Defendants argue that they lack the necessary contacts with Kentucky to meet the requirements of the Kentucky long-arm statute or to comport with the Due Process Clause. [DN 13 at 5–10]. Plaintiffs contest both points and maintain that the Court's exercise of jurisdiction over Defendants is proper and dismissal on this basis is unwarranted. [DN 25 at 9–15].

The party asserting personal jurisdiction has the burden of showing that such jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). However, at this stage of litigation, only a prima facie showing is required. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

Personal jurisdiction is "[a]n essential element of the jurisdiction of a district . . . court," and without personal jurisdiction the court is "powerless to proceed to an adjudication." *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937). A federal court applies a two-step inquiry to determine whether it may exercise personal jurisdiction over a nonresident defendant: "(1) [W]hether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). The district court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and the constitutional requirements of due process. *Id.* When a district court rules on a Rule 12(b)(2) motion to dismiss without an evidentiary hearing, the plaintiff need only make a "prima facie" case that the court has personal jurisdiction. *See, e.g.*, *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

The Kentucky Supreme Court has held that the state's long-arm statute, KRS § 454.210, does not reach the outer limits of the Due Process Clause. *Caesars Riverboat Casino, LLC v.*

*Beach*, 336 S.W.3d 51, 57 (Ky. 2011). Consequently, the Court must first determine if personal jurisdiction is proper under Kentucky's long-arm statute. If so, the Court will then turn to the federal due process analysis.

Kentucky's long-arm statute lists nine enumerated categories of conduct that provide bases for personal jurisdiction. KRS § 454.210(2)(a). The statute also contains a separate requirement that a plaintiff's claim "arise from" the enumerated conduct. *Id.* § 454.210(2)(b); *Beach*, 336 S.W.3d at 58–59. Plaintiffs rely on the statute's first, second, third, and fourth enumerated categories. [DN 25 at 10]. The statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by agent, as to a claim arising from the person's: 1. Transacting any business in this Commonwealth; 2. Contracting to supply services or goods in this Commonwealth; 3. Causing tortious injury by an act or omission in this Commonwealth; [or] 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

KRS § 454.210(2)(a)(1)–(4). Because "[l]ong-arm jurisdiction analysis is especially dependent upon the underlying facts of the individual case," a scrutinous look at the parties' disagreement is necessary. *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011).

KRS § 454.210(2)(a)(1) permits jurisdiction against defendants "[t]ransacting any business in this Commonwealth." Plaintiffs claim Defendants' conduct satisfies this provision because "Defendants transact business in Kentucky by marketing and selling DRYFT directly to Kentucky residents through their online retail store, through regular retail stores, and through Kentucky-based sales personnel." [DN 25 at 10]. Defendants concede that Kretek has one employee who resides in South Williamson, Kentucky, though they contest the subsidiary for

4

which that individual works. [DN 13-1 ¶ 6]. Additionally, Defendants do not deny that their online store can and does make sales to Kentucky residents. Plaintiffs attach a declaration from Thomas Hulsey that confirms this fact. [DN 25-3 ¶ 8]. Mr. Hulsey stated that he ordered DRYFT products through the www.getdryft.com website and had them delivered to his work address in Bowling Green, Kentucky. [*Id.*].

A case from the Eastern District of Kentucky found that a defendant's internet sales constituted transacting business in Kentucky for purposes of the long-arm statute. *Tempur Seal Int'l, Inc. v. Wondergel, LLC*, No. 5:16-cv-83, 2016 WL 1305155, at *2 (E.D. Ky. Apr. 1, 2016). The court found convincing the following characteristics of the defendants' website: the ability of customers in all fifty states to purchase defendants' products; the free shipping of products to customers in forty-eight states, including Kentucky; the ability to engage in an online chat with defendants' representatives; the ability to sign up for an email list; the ability to locate the company's customer service number and contact the company via email; and, finally, the ability to register and save information on defendants' website. *Id.* The court recognized that the plaintiffs had not alleged that the defendants actually served customers in Kentucky but noted that the defendants did not contest having website-based sales in Kentucky. *Id.* Based on those findings, the court concluded that the plaintiffs satisfied the prima facie showing of jurisdiction.

Here, Defendants maintain an interactive website that allows customers to do most of the things customers could do on the website discussed in *Wondergel*. Defendants' website can be accessed at www.getdryft.com. On the website, customers in Kentucky can purchase DRYFT variety packs, cans of specific DRYFT flavors, and subscriptions for DRYFT cans. The website allows customers to "leave a message" in a pop-up chat bar. In addition, customers can sign up to receive DRYFT emails and can register and save their information on DRYFT's website. Finally,

5

customers can locate DRYFT's contact information—physical address, phone number, and email address under the "Contact Us" button. Unlike in *Wondergel*, Plaintiffs have alleged that Defendants have made website-based sales in Kentucky. Again, this is evidenced by the declaration of Mr. Hulsey.

Like the court in *Wondergel*, the Court finds that Plaintiffs satisfy the prima facie showing that Defendants transact business in Kentucky for purposes of Kentucky's long-arm statute. However, that is not all Plaintiffs must do. Plaintiffs must also show their claims against Defendants "arise from" the above conduct. In *Caesars Riverboat Casino, LLC v. Beach*, the Kentucky Supreme Court discussed this requirement at length. 336 S.W.3d 51 (Ky. 2011). The court offered the following explanation of this requirement:

> [T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction. Conversely, the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action. If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction, then jurisdiction is properly exercised.

*Id.* at 58–59. The court stated further that "[w]hether such a connection exists will often be self-evident, especially when the claim is based upon tortious injury that occurs in this state or upon contracts to supply goods in this state." *Id.* at 59. However, because of the various possible factual scenarios, "no general rule can be expressed . . . and the analysis must necessarily be undertaken on a case by case basis." *Id.*

Plaintiffs maintain that Defendants' "activities in Kentucky—marketing and selling DRYFT—constitute the very basis of Plaintiffs' misappropriation claims, as Defendants could not make DRYFT without the unauthorized use of the NP Trade Secrets." [DN 25 at 12]. In other

6

words, Plaintiffs argue that the sale of DRYFT in Kentucky is a statutory misappropriation of a trade secret, and this statutory misappropriation gives rise to Plaintiffs' claims.

The definition of "misappropriation" under both the federal Defend Trade Secrets Act and the Kentucky Trade Secrets Act is nearly identical. 18 U.S.C. § 1839(5)(B); KRS § 365.880(2). In relevant part, the definition of "misappropriation" under both is the acquisition, disclosure, or use of a trade secret of another without express or implied consent. 18 U.S.C. § 1839(5)(A)–(B); KRS § 365.880(2)(a)–(b). The term "use" is extremely broad under the Defend Trade Secrets Act. The Restatement (Third) of Unfair Competition defines "use" as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant," including "marketing goods that embody the trade secret [or] employing the trade secret in manufacturing or production . . . ." Restatement (Third) of Unfair Competition § 40, cmt. c (1995). Many courts have adopted the Restatement definition. *See, e.g.*, *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292–93 (11th Cir. 2003); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F. Supp. 3d 1150, 1164–65 (N.D. Ill. 2020). Therefore, the term "use" in § 1839(5) is broad enough to include Defendants' marketing and sales in Kentucky.

Plaintiffs' argument fails, however, because there is not a sufficient nexus between Plaintiffs' misappropriation claims and the "use" of the trade secret in Kentucky. *See Beach*, 336 S.W.3d at 59. The substantive allegations in the Complaint make clear that the alleged *production* of DRYFT forms the crux of Plaintiffs' trade secret claims. [*See, e.g.*, DN 1 ¶ 36 ("[Defendants] could not have independently *developed* their DRYFT product . . . without the wrongful acquisition, disclosure, and use of the NP Trade Secrets.") (emphasis added)]. Plaintiffs do not allege this harm occurred in Kentucky. Rather, Plaintiffs focus on Defendants' website-

7

based sales and marketing in Kentucky as the basis for personal jurisdiction. [DN 1 ¶¶ 12–13]. The Complaint never marries the two concepts.

For example, the Complaint alleges that "Swedish Match became aware of the misappropriation . . . in September 2019, when Kretek announced the formation of Dryft Sciences to manufacture DRYFT." [*Id.* ¶ 29]. This initial misappropriation allegedly occurred before Defendants sold a single DRYFT patch into Kentucky. Therefore, the Complaint cannot support a reasonable inference that Plaintiffs' trade secret claim "originates from" Defendants' marketing and sales in Kentucky—the harm predates any marketing and sales in the state. *See Beach*, 336 S.W.3d at 58–59. Therefore, Plaintiffs' claims do not "arise from" Defendants' conduct in the Commonwealth for purposes of the Kentucky long-arm statute.

The Court concludes that it does not have personal jurisdiction over Defendants under Kentucky's long-arm statute. Because no jurisdiction exists under the narrower-in-scope long-arm statute, it is unnecessary to proceed to a federal due process analysis.

**B. Transfer of Venue**

Having concluded that the Court does not have personal jurisdiction over Defendants, it is now necessary to determine what should become of this case. If venue is improper, a court has two choices—it can either dismiss the action for improper venue or it can transfer the action to another federal district court that has proper venue.

Where transfer is sought in actions in which the court lacks personal jurisdiction over the defendants, 28 U.S.C. § 1406 is the appropriate venue statute. *See Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal

jurisdiction over the defendants or not."). According to § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In other words, when lacking personal jurisdiction, a court may, in the interest of justice, transfer the action to a judicial district where personal jurisdiction over the defendant is present and venue is proper. *Isaka Inv., LTD v. Xino Corp.*, No. 3:05-CV-795, 2006 WL 1980172, at *1 (W.D. Ky. July 10, 2006). Further, 28 U.S.C. § 1631 provides that if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." These two statutes give district courts broad discretion in ruling on a motion to transfer. *See Stanifer v. Brannan*, 564 F.3d 455, 456–57 (6th Cir. 2009); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998). Importantly, because "[§] 1406 applies to actions that are brought in an impermissible forum[,] the district court need not have personal jurisdiction over defendants before transferring pursuant to this section." *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009) (citing *Martin v. Stokes*, 623 F.2d 469, 471, 474 (6th Cir. 1980)).

Two issues remain for the Court. First, could Plaintiffs' suit originally have been filed in the Central District of California? Second, is transfer to that district in the interest of justice? The Court addresses each in turn.

### 1. Where the Case Could Have Been Brought

The Court must first determine whether the case could have been brought in the Central District of California, as Defendants contend. The venue statute provides:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

>    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>    (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Defendants argue in their Motion that the Central District of California is the appropriate forum because their principal place of business is located in Moorpark, California. Plaintiffs do not dispute that they could have brought the case in that court. Because Defendants reside, for venue purposes, in Moorpark, California, the Court finds that the action could have been brought in the Central District of California.

### 2. Interest of Justice

The Court must now determine whether transferring the case to the Central District of California would be in the "interest of justice." *See* 28 U.S.C. §§ 1406(a), 1631. Courts in the Sixth Circuit have determined that a variety of circumstances satisfy the "interest of justice" standard of § 1406(a) and § 1631.

As is relevant here, courts in the Western District of Kentucky have reasoned that "[t]ransfer is . . . typically in the 'interest of justice' because it saves 'the parties the time and expense associated with refiling.'" *Advanced Sols. Life Scis., LLC v. BioBots, Inc.*, No. 3:16-CV-00709, 2017 WL 2114969, at *8 (W.D. Ky. May 15, 2017) (quoting *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 285 (D.D.C. 2015)). As there is a patent infringement case currently pending in the Central District of California with many of the same parties and nonparty witnesses, the Court finds that it would be in the interest of justice to transfer the case to that district. It makes little sense to dismiss the case, thereby requiring Plaintiffs to expend the time and resources necessary to refile. While Defendants argue that Plaintiffs' federal and state law trade secret causes

10

of action are defective and fail to state a claim, the Court will leave that to the transferee court to determine.

Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391, the Central District of California is a place where the action could have been brought originally because that is the judicial district where Defendants can be found.  The undersigned believes that the Central District of California is the better venue to address Plaintiffs' claims considering the already pending action in that court.

### III.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **DENIED**; however, their Alternative Motion to Transfer is **GRANTED**. Accordingly, the Clerk is hereby **ORDERED** to transfer this case to the Central District of California.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

September 21, 2020

cc: counsel of record

11